## Louisville Gas & Electric Company v. Nall.

(Decided November 27, 1917.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Pleading—Petition—Sufficiency of in Personal Injury Suit.—A petition charging that the occupant of a house was injured by the negligence of defendant in leaving an opening in a floor, of which she had no notice and through which she fell, stated a good cause of action.

2. Parties—Joinder of Defendants in Negligence Cases.—The plaintiff may, in an action to recover damages for personal injuries, join in one suit different defendants under allegations showing that they acted in concert in committing the act of negligence that caused the injuries.

3. Parties—Misjoinder of Defendants in Negligence Cases.—Where a petition discloses that the negligence was committed by two defendants neither having any connection with the other in its commission, there is a misjoinder of parties defendant.

4. Parties—Misjoinder of Defendants in Negligence Cases.—Alternative Pleading.—A petition against two defendants charging that one or the other of them committed the negligent act complained of is not allowable under section 113 of the civil code, which permits alternative statements as to facts but not parties.

5. Parties—Misjoinder of Defendants—Motion to Require Plaintiff to Elect.—Where the petition states facts showing that there is a misjoinder of parties defendant, the plaintiff may, under section 85 of the code, be required to elect against which of the defendants he will prosecute his action.

6. Parties—Misjoinder of Defendants—Practice Where Misjoinder Does Not Appear in Petition But Is Disclosed by Evidence.—When the fact that there is a misjoinder does not appear in petition but is disclosed for the first time in the evidence, the court should require the plaintiff to elect, if the defendants so request in seasonable time.

7. Parties—Misjoinder of Defendants Cannot Be Raised by Motion for Peremptory Instruction.—When the evidence discloses that there is a misjoinder of parties defendant, the question of misjoinder cannot be raised by a motion for a peremptory instruction.

8. Trial—Peremptory Instruction—Definition of.—A peremptory instruction challenges the sufficiency of the evidence to take the case to the jury, and is only available when there is no evidence to support the cause of action.

9. Parties—Misjoinder of Defendants in Negligence Cases—Practice—Judgment.—Where the evidence discloses that there is a misjoinder of two defendants in a negligence case, but there is no objection by the defendants to the misjoinder, the plaintiff is entitled under proper instructions to go to the jury as to both.

10. Evidence—Conflict in Evidence for Plaintiff in Suit Against Two Defendants—Effect of.—Where the plaintiff in a negligence case against two defendants introduces some witnesses who testify that one of the defendants is guilty and the other innocent, and other witnesses who testify to the contrary, the conflicting, contradictory nature of the evidence will not deprive the plaintiff of the right to go to the jury as to both of the defendants.

11. Evidence—Conflict in Evidence for Plaintiff in Suit Against Two Defendants—Effect of.—When there is conflict in the evidence of witnesses for the plaintiff as to which of the two defendants sued is guilty of the negligent act, the trial court is not authorized on account of this conflict in the evidence to take the case from the jury. If the plaintiff has introduced sufficient evidence to go to the jury as to both he is entitled to have the jury determine whether one or both of the defendants are guilty.

12. Evidence—Conflict in Evidence for Plaintiff in Suit Against One Defendant—Effect of.—Where there is one defendant and there is evidence for the plaintiff showing that he committed the negligent act, and other evidence for the plaintiff showing that he did not, the case should go to the jury.

13. Evidence—Test of Right of Plaintiff to Go to the Jury.—When there is sufficient evidence in a negligence case to show that the defendant committed the acts complained of, and that the plaintiff was injured thereby, the case should go to the jury, although the weight of all the evidence introduced may tend to show that the defendant did not commit the negligent act complained of, or that the plaintiff was not injured thereby.

14. Negligence—Existence or Non-Existence of—Evidence—Failure of Proof.—Where it appears from the evidence in a damage suit that the injury complained of may as reasonably have been caused by acts that would acquit the defendant as by acts that would convict him, the case should be taken from the jury.

15. Negligence—What Constitutes Actionable.—To constitute actionable negligence there must be a concurrence of two things: first, negligence; and, second, injury resulting as the proximate result of it.

16. Trial—Instructions—When Not Error to Refuse Instructions Presenting Theory of Defense.—It is not error to refuse an offered instruction of the defendant presenting his theory of the case when the instructions given by the court embodied the theory of the rejected instruction.

17. Negligence—Liability for Act of If Consequences Be Anticipated.—When an opening was left in the floor of an occupied house by laborers doing some work, they were under a duty to anticipate that the floor in which the opening was left might be used by the occupants of the house.

MATT O'DOHERTY for appellant.

ELMER UNDERWOOD and BECKHAM OVERSTREET for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In this suit to recover damages for personal injuries, brought by the appellee, Emma Nall, as plaintiff, against the appellant, Louisville Gas & Electric Co., and one John H. Fleck, as defendants, there was a verdict and judgment for Fleck, and against the gas company for $7,500.

On this appeal by the gas company several errors are assigned as grounds for reversal, and in disposing of them a consideration of the pleadings, especially the petition, becomes necessary. It was charged in the petition that "the injuries to the plaintiff hereinafter set out were caused by the gross negligence and carelessness of the defendant, Louisville Gas & Electric Co., and of the defendant, John H. Fleck, and by their officers, agents, servants and employes. . . .

"That plaintiff sustained the injuries hereinafter set out on or about July 21, 1915. That for several days prior to July 21, 1915, the defendants, by their officers, agents, servants and employes, had been engaged in work on the gas pipes, gas meters and gas apparatus in the aforesaid house at Twenty-fourth and Walnut streets, and that, in so doing, they from time to time entered a certain closet on the first floor of said property in the possession and occupancy of the plaintiff as aforesaid and performed various work upon the gas pipes, meters, and other apparatus, in said closet, and, in so doing, left the floor of said closet in a dangerous, unsafe and defective condition, and left gas pipes protruding from said floor, which said conditions were unknown to the plaintiff. That on or about July 21, 1915, after said defendants had been working in said closet as aforesaid for several days, the plaintiff being unaware of said dangerous conditions, went into said closet and was precipitated through that portion of the floor which had been left in said dangerous, defective and unsafe condition by the defendants, and struck herself against the aforesaid pipes and sustained the injuries herein referred to. . . .

"That at the times referred to the defendant, John H. Fleck, was a contracting plumber, and without any request, authority or direction from the plaintiff, or her husband, by his agents, servants and employes, and also the Louisville Gas & Electric Co., by its agents, servants and employes, for several days prior to July 21, 1915, had been engaged in work on the gas pipes, gas meters and gas apparatus in a house the first floor of which was occupied by plaintiff. . . ."

The answers of the defendants traversed the averments of the petition and pleaded contributory neglect. It is urged that the petition was fatally defective and consequently the demurrer, as well as the timely motion for a judgment *non obstante verdicto,* should have been sustained.

We think there can be no serious question that this petition stated a good cause of action against both of the defendants. It is alleged that without any request, authority or direction from the plaintiff, the servants of these companies entered a closet in the house occupied by the plaintiff for the purpose of doing some work upon the gas pipes and other apparatus in the closet; that in the course of this work, they negligently and carelessly left the floor of the closet in a dangerous and unsafe condition; that plaintiff, being unaware of this condition, went into the closet and received the injuries of which she complains.

It seems to us quite plain that if the servants of these defendants, acting for their respective masters, went into a house occupied by Mrs. Nall, as they had a right to do, and carelessly and negligently left a part of the house in a dangerous and unsafe condition, and thereby Mrs. Nall, who was ignorant of the condition in which the premises had been left, sustained injuries, there was a breach of duty upon the part of the defendants that resulted in damages to her, because when these defendants entered the house for the purpose of making repairs upon fixtures therein, they were under a duty to leave the premises in the condition in which they found them, or at least in a reasonably safe condition. Mrs. Nall had the right to use and enjoy the premises occupied by her, and if these premises, which were in a safe condition, were made dangerous and unsafe by the negligent acts of other parties not her servants and over whose conduct she had no control, but who had a right to enter her house to do work therein, she could clearly bring an action against them for injuries sustained by her on account of the negligent manner in which they did the work they were engaged in doing.

The petition also specifically states the manner in which the negligent act was committed, so that the defendants were fully and accurately advised by the pleadings of the nature of the negligence charged and the cause of complaint against them.

There is a wide difference between the facts stated in this petition and the facts stated in the petition criticized

by the court in the case of Louisville & Portland Canal Co. v. Murphy, 9 Bush 522. In that case the defect in the petition consisted in the failure to aver that the bridge from which Lucretia Murphy fell to her death was a part of a public thoroughfare under the control of the canal company, or if a private bridge, that she had been licensed to travel over it under an agreement with the owners to keep the same in repair. In this case the defendants entered a house occupied by the plaintiff to do repairs on fixtures owned by or under their control and negligently left a part of the house in a dangerous and unsafe condition. We think both the demurrer to the petition and the motion for a judgment *non obstante veredicto* were properly overruled.

Coming now to the evidence we find that Mrs. Nall with her family occupied as a tenant the first floor of a two-story house, in which there was a hall about seven feet wide extending from the front to the rear door. In this hall there was a stairway leading from the first to the second floor, and on the first floor under this stairway there was a closet the width of the stairway and about nine feet long. This closet was closed, but had a door in the end, through which persons could enter it. There was also a good floor in the closet and it was used, as many other like closets are used, by Mrs. Nall and her family for storing articles that are commonly stored in places like this. There was also in this closet some gas fixtures connected with other fixtures in the cellar under the closet floor, and it was these fixtures that the servants of the defendants were engaged in repairing.

It appears that Fleck, a master plumber, at the request of Aldiges, the owner of the house, sent, on July 19, 1916, two of his plumbers, Burkholder and Glenn, to make some changes and repairs in the gas pipes of the building which ran from the cellar to the second floor and up through this closet. To get into the cellar Burkholder and Glenn took up some boards from the floor of the closet, leaving an open space sufficiently large to enable them to get from the closet to the cellar.

Burkholder, who was introduced as a witness by the plaintiff, Mrs. Nall, testifying as to the condition in which they found the floor of the closet, what they did, and how they left it when they quit work that day, said, in substance, that when they first went into the closet the floor was down and they took up a part of it in order to get into the cellar; that when they quit work that after-

noon they put back the floor they had taken up and left it as they found it.

Glenn, also introduced as a witness by the plaintiff, Mrs. Nall, said, in substance, that when they went into the closet the floor was down and that they took up some of the planks to make an opening large enough to get into the cellar; that when they quit work the afternoon of the day they went there they put the boards back in the same condition in which they found them that morning.

It seems that these plumbers did not finish their work on the 19th and intended to go back and complete it on the 20th, but for some reason did not return on that day. It appears, however, that on the 20th, Fallon and Devenny, two employes of the gas and electric company, were sent, at the request of the owner of the house, to the building by their employer to do some work on these gas fixtures.

Introduced as a witness by and in behalf of Mrs. Nall, Fallon said, in substance, that he and Devenny reached the house about eight o'clock on the morning of the 20th; that when they went into the closet for the purpose of making some repairs on the fixtures they found that some of the boards in the closet floor had been taken up, leaving a hole in the floor; that when they quit work that day they left the floor of the closet in the condition in which they found it, that is, with an opening or hole in the floor large enough for a man to go through.

Devenny, also introduced as a witness by Mrs. Nall, testified, in substance, the same as Fallon, saying that when they went into the closet they found the planks in the floor up, which left a hole in the floor, through which they went, in the course of their employment, into the cellar; that when they left the house on that day they did not close the hole in the closet floor or put back in their place the planks that had been taken up, but left the floor in the condition in which they had found it.

Mrs. Nall, testifying in her behalf, said, in substance, that she had been living in the house some time before the occasion in question and had used the closet for various purposes, going into it sometimes as often as once or twice a day; that there had always been a good, safe floor in the closet before the plumbers and gas company employes came; that on July 21st she had occasion to go in the closet for something that she wanted, and when she went in she fell through the opening in the floor, sustaining the injuries of which she complains; that she did not know the floor of the closet had been taken up or know

that any change had been made in it, nor did she see the hole before she stepped into it; that the closet was dark, and she had some matches that she intended to light to enable her to see the article that she wanted to get, but before she had opportunity to or did light a match she stepped into the hole, which was near the door of the closet.

There was also evidence tending to show that no other persons than these employes of Fleck and the gas and electric company were in the closet on the 19th or 20th of July, or on the 21st prior to the time that Mrs. Nall went into the closet, and that previous to the time the plumbers went into the closet the floor was safe for use.

We may, therefore, say that there was sufficient evidence to show that the opening in the floor of the closet and the dangerous condition created thereby that caused Mrs. Nall to fall into the opening, was made by either the employes of Fleck or of the gas and electric company.

It will be observed from this evidence, which is all that we think necessary to recite on this issue, that the employes of the defendant, Fleck, who were introduced as witnesses by Mrs. Nall, testified that they took up the floor in the closet on the morning of the 19th of July, and when they quit on that day put the floor back as they found it, and that the employes of the gas and electric company, who were also introduced as witnesses by Mrs. Nall, testified that when they went into the closet on the morning of the 20th, they found the opening in the floor and left it in exactly the same condition in which they found it.

So that, according to the evidence of the employes of Fleck, they were free from negligence, as they did not leave the floor of the closet in a dangerous or unsafe condition, and the natural and reasonable inference from their evidence, taken in connection with the other evidence showing that the employes of the gas and electric company were the first persons who went into the closet after they left the house, is that the opening in the floor was made by the employes of the gas and electric company and was left by them in the floor when they quit work; while, according to the evidence of the employes of the gas and electric company, they were not guilty of any negligence, because they found a part of the floor taken up and the opening in the floor when they went there, and left the floor and the opening just as they had found it, and the natural and reasonable inference from their evidence, taken in connection with other evidence

·tending ·to show that no ·person had gone into the closet
after the employes of Fleck had left the house and before
·the employes of the gas and electric company. went into
the closet, .was that the opening in the floor of the closet
·was left there by the employes of ·Fleck. Or, to put it ·in
·another way, according to the ·evidence of the employes
of Fleck, the acts that caused the injuries to Mrs. Nall
were due to the negligence of the employes of the gas and
·electric company. On the other hand, according to the
·evidence of the employes.of the·gas and electric company,
·the acts that caused the injuries sustained by Mrs. Nall
·were due to the negligence of the employes of Fleck.

With the evidence in this condition, it is ·urgently in-
sisted ·by counsel for the gas and electric·company that
the trial judge should have sustained the motion·made by
counsel for this company to direct the jury to return· a
verdict in its favor. One line of argument in support
of this contention is that where the plaintiff in an action .
for damages against two defendants advances two al-
ternative theories as to the alleged negligence causing
the injuries, ·one of ·the theories affecting one of the de-
fendants and one of them the other, there being no joint
or concurrent negligence, the· theories are mutually de-
structive and the plaintiff cannot ask the court or jury
to make choice between them. The other is, that where
it appears from the ·evidence that the plaintiff's injuries
resulted from one or two negligent acts, for only one of
which the defendant is liable, if one defendant is sued
and the evidence leaves it in doubt as to which act of
negligence caused· his injury, the plaintiff fails to make
out ·his case.

These two propositions may be considered together.
The ·petition charged only one act of negligence, to-wit,
leaving an opening in the closet floor, and it was averred
that this act of negligence was committed by Fleck and
the gas and electric company; and the plaintiff had the
right, under repeated.decisions of this court, to join these
two defendants in one suit under the averments of the
petition, which showed that both of them acted in con-
cert or united in committing the act of negligence that
caused the injuries of which she complains. Pugh v. C.
& O. Ry. Co., 101 Ky. 77; ·I. ·C. R. R. Co. v. Louisville
Bridge Co., 171 Ky. 445; Louisville Bridge Co. v. Sieber,
·157 Ky. 151; C. & O. Ry. Co. v. Booth, 149 Ky. 245.

:We· do not, however, mean to say that she could prop-
erly have. joined them if the allegations of the petition
had .disclosed· that the act of negligence. committed by

each was separate and independent of the act of negligence committed by the other, neither having any connection with the other in its commission; L. & N. R. R. Co. v. Ft. Wayne Electric Co., 108 Ky. 113; Bonte v. Postel, et al., 109 Ky. 64; or that she could have joined them under allegations showing that one or the other of them committed the negligent act, but that she did not know which, because alternative pleas like this are not allowed under section 113 of the Civil Code. Under this section the alternative statements must relate to facts and not parties. Brown v. I. C. R. R. Co., 100 Ky. 525. And so, if the petition had stated facts that disclosed the existence of either of these conditions, the plaintiffs, on timely motion, as provided in section 85 of the Civil Code, could have been required to elect against which of the defendants she would prosecute her action.

But the petition, as we have seen, set forth a state of facts that authorized the plaintiff to unite in one action the defendants, and so the defendants could not have required an election on the pleadings, but when the evidence disclosed that the negligent act was not committed jointly, or by the defendants acting in concert, no motion to require the plaintiff to elect against which one of the defendants she would prosecute her action was made. Nor was any question raised, by motion or otherwise, when this misjoinder was developed by the evidence, challenging her right to maintain a joint action against these two defendants. Evidently counsel for both defendants reached the conclusion that the misjoinder did not prejudice their rights and so they were content to let the case go without raising any question of misjoinder, although this question could have been raised when the misjoinder theretofore concealed was developed in the evidence.

The plaintiff will not be permitted by the manner in which he frames his pleading to conceal that there is a misjoinder of parties defendant and thereby deprive the defendants of their right to raise this question when the fact that there is a misjoinder is disclosed for the first time in the evidence. In making this statement we have not overlooked section 86 of the Civil Code, which provides that objections to causes of action are waived unless they are made pursuant to section 85, which section provides that the motion to elect must be made before a defense is filed, as these code provisions apply only when the pleadings on their face disclose the misjoinder. When the pleadings, as in this case, do not disclose the mis-

joinder, the defendants improperly joined may, in seasonable time, when the misjoinder is disclosed by the evidence, require the plaintiff to then elect against which one of the defendants he will prosecute his action.

But the defendants did not lose anything by failing to make a motion to elect because if such motion had been made and overruled it would not have been reversible error on this record. A case directly in point and so holding is L. & N. R. R. Co. v. Ft. Wayne Electric Co., 108 Ky. 113. And if the motion had been sustained and the plaintiff had elected to prosecute her case against the gas and electric company she would have been entitled, as we will presently show, to go to the jury as to this defendant.

It further appears that counsel for the gas and electric company preferred to test the right of the plaintiff to maintain the joint action by a motion for a peremptory instruction made at the conclusion of the evidence for the plaintiff, and again when all the evidence was in. But we are quite sure that the error committed by the misjoinder disclosed for the first time in the evidence could not be taken advantage of in this way. A peremptory instruction challenges only the sufficiency of the evidence to take the case to the jury. In other words, it is a demurrer to the evidence upon the ground that the evidence does not show a cause of action in the plaintiff, and it is only available when there is no evidence to support the cause of action against the defendant making the motion. It was not available in this case because, as we have determined, there was sufficient evidence to show that the negligent act that resulted in the injury complained of was committed by the employes of the gas and electric company.

It is true, as we have said, the evidence disclosed that there was only one act of negligence, and that it was not the joint or concurrent act of the defendants, but the circumstance that the act of negligence complained of was not jointly or concurrently committed by the defendants, did not, in view of the evidence showing that both of them were guilty of the negligent act, authorize a peremptory instruction on behalf of either of them or deprive the plaintiff of the right to go to the jury as to both, in the absence of a motion to require the plaintiff to elect.

There could not, of course, under the evidence have been a joint or several verdict against both defendants, such as would have been authorized if the evidence had

established that the negligent act was jointly or concurrently committed by both of them, but as the defendants did not object to the misjoinder, the plaintiff was entitled, under proper instructions, to go to the jury as to both, and to a verdict against that defendant that the jury believed to be guilty of the negligent act, and so we shall treat the case as if the defendants were properly joined.

Looking at the case in this way, the theories of the plaintiff, as developed by her evidence, were not mutually destructive, although it may be true that the jury had to make a choice between them. As the case was practiced, there were two defendants, and the plaintiff had the right to introduce such evidence as she had tending to show that each of them was guilty of the negligence complained of. She had the right, in making out her case against the gas and electric company, to show that it was guilty of the negligence charged, and also to undertake to establish that Fleck was guilty of the negligence charged. The fact that the negligence as developed by the evidence was not the joint or concurrent act of the two defendants did not, under the manner in which the defendants elected to practice the case, deprive the plaintiff of the right to show which one of them committed the negligent act, and all the evidence for the plaintiff was directed to an effort to show that one of the defendants was guilty. The evidence of the employes of the gas and electric company, which tended to show that Fleck was guilty, did not, as urged by counsel, destroy the probative value of the evidence of the employes of Fleck tending to show that the gas and electric company was guilty. The only effect of this conflict was to show that the witnesses differed as to which one of the defendants was negligent, and this occurs in almost every case in which two defendants are sued.

If a plaintiff sues two defendants for negligence and introduces in his behalf witnesses, some of whom try to fasten the negligence on one defendant and some on the other, this furnishes no ground at all why the suit of the plaintiff as to either defendant should be ended by a directed verdict when the contradictory evidence of these witnesses has been developed. If this were so, a plaintiff who joined two defendants in a suit for negligence, seeking to recover against one or both of them, whichever was guilty of the negligence complained of, would always be in danger of having his suit dismissed if, as usually happens, some of the witnesses testified that one of the de-

fendants was innocent and the other guilty and others. gave exactly contrary evidence. But the plaintiff is not to lose a suit that he has brought against two defendants merely because some of the witnesses offered by him say that one defendant committed the negligent act and other witnesses say the other one did. When a state of facts like this is developed in the evidence, it is a question for the jury to reconcile these conflicting statements and say which one of the parties committed the negligent act complained of.

In this case there was, as we think, sufficient evidence to sustain a finding of negligence against either of these defendants, and it would be laying down a new and strange rule in negligence law to say that although the plaintiff had made out her case against both of the defendants, nevertheless her case must be dismissed because the evidence of some of her witnesses showed that one of the defendants was guilty, while the evidence of others of her witnesses showed that the other defendant was guilty. The effect of a rule like this would be to deter a plaintiff from joining defendants in negligence suits for fear that the conflicting nature of the evidence of the witnesses would result in a non-suit.

In the trial of cases it often happens that after the plaintiff has introduced one or more witnesses whose evidence is sufficient to make out a case against the defendant, he will put on other witnesses whose evidence may contradict that of his first witnesses and whose evidence if considered alone would be sufficient to show that he had failed to make out his case; but when a condition like this comes up in the trial of a case, and there is conflict in the evidence of the witnesses for the plaintiff the trial court is not authorized, on account of this conflict in the evidence, to take the case from the jury. If the plaintiff has introduced sufficient evidence to take the case to the jury, he is entitled to have the jury pass on it, although other evidence introduced by him may show that his case should not go to the jury. No litigant can, in every instance, determine in advance what statements witnesses introduced by him may make in the course of their evidence. But he is not to be denied his right to have his case submitted to the jury merely because some of his witnesses make statements in direct conflict with the evidence of others of his witnesses. On the contrary, we regard it as well settled under our practice that when two defendants are sued for one act of negligence, and there is evidence tending to show that one is guilty of the neg-

ligence complained of and other evidence tending to show that he is not, but that the other is guilty, it is for a jury to weigh the conflicting evidence and determine who should be held responsible, and in this class of cases the jury may and often do find for one and against the other defendant. I. C. R. R. Co. v. Murphy's Admr., 123 Ky. 787; C. & O. Ry. Co. v. Booth, 149 Ky. 245; Broadway Coal Mining Co. v. Robinson, 150 Ky. 707; Louisville Bridge Co. v. Sieber, 157 Ky. 151. And so when there is only one defendant, and there is evidence to show that he committed the negligent act complained of, and other evidence showing that he did not, the case should go to the jury, whose province it is to reconcile this contradictory evidence and decide whether the defendant should be convicted or acquitted.

Suppose, for example, the gas and electric company had been the only defendant and the plaintiff had introduced sufficient evidence to show not only the injury to the plaintiff, but that this injury was directly caused by the negligent act of the company, and had then introduced other witnesses who said that the negligent act was not committed by the company, but by a person not a party to the action; could it be successfully maintained that the plaintiff, although she had made out her case, must suffer a non-suit merely because some of her witnesses exonerated the company? Certainly not. Nor will the fact that the plaintiff has improperly joined as defendant persons who should not have been joined, or the fact that the plaintiff fails to make out his case against all who have been properly joined, affect his right to go to the jury against that one who was properly made a defendant and against whom he has made out his case, although there may be a failure of proof and a directed verdict as to the others.

Illustrations of this practice are found in cases where a conspiracy to injure business is charged and several sued, but the evidence fails to show a conspiracy, but does show the guilt of one of the defendants. In such cases the plaintiff is entitled to go to the jury as to that defendant against whom there is sufficient evidence. Leech v. Farmers Tobacco Warehouse Co., 171 Ky. 791; McClintock v. McClure, 171 Ky. 714.

And so we repeat that no matter how many defendants are joined or whether the joinder is improper or rightful, the plaintiff is entitled to go to the jury as to that defendant against whom he has made out his case,

although a directed verdict may be ordered as to the others. In no state of case that we can think of will the misjoinder of parties authorize a directed verdict as to that defendant against whom the plaintiff has made out his case.

The whole contention of counsel for the gas and electric company is really put on the ground that because there was a misjoinder of defendants and there was some evidence tending to show that the defendant other than the gas and electric company was guilty, the gas and electric company should have been acquitted on a peremptory, although there was ample evidence to establish its guilt. This contention, as we have endeavored to show, is utterly untenable.

We do not see any difference between a state of case in which the contradictory or conflicting evidence is introduced by the plaintiff and a state of case in which the contradiction or conflict appears from a consideration of the evidence of the plaintiff and the defendant taken together. In either case it is for the jury to say which witnesses they will believe. When there is conflict or contradiction in the evidence for the plaintiff, the jury have the same right to disregard some of the evidence as they do when there is a like conflict and contradiction between the evidence of the witnesses for the plaintiff and the witnesses for the defendant.

The sole test of the right of the plaintiff to go to the jury in negligence cases is, was there evidence or reasonable inference therefrom to show that the defendant or defendants committed the act or acts of negligence complained of, and that the plaintiff was injured thereby? When there is sufficient evidence of this nature, then the court is not authorized to take the case from the jury, although the weight of all the evidence introduced may tend to show that the defendant did not commit the negligence complained of, or that the plaintiff was not injured thereby, or both.

We are furnished by counsel for the gas and electric company with a long line of cases, of which Hughes v. Cincinnati, etc., Ry. Co., 91 Ky. 526; Louisville Gas Co. v. Kaufman, Straus & Co., 105 Ky. 131; Thomas' Admr. v. Eminence Distilling Co., 151 Ky. 29; L. & N. R. R. Co. v. Long, 139 Ky. 299, and C. & O. Ry. Co. v. Adkins, 167 Ky. 329, are fair examples, supporting the rule consistently followed by this court, that when it appears from the evidence in a damage suit that the injury complained of may as reasonably have been caused by acts

that would acquit the defendant of the negligence as by acts that would convict him, the case should be taken from the jury, and this upon the ground, as said in one of the cases, that "the complaining party must not only show the injury, but also some evidence tending to show that the other party is to blame for it. The mere proof of the injury, with attending circumstances showing that the party chargeable with negligence 'may be blameless or may be at fault, will not do."

But the principle announced in this line of cases is not controlling here, because, as we have seen, there is no dispute as to the cause of the injuries complained of by the plaintiff, and there is evidence that these injuries were produced by the act of the gas and electric company.

It is of course elementary in the law of negligence that "to constitute actionable negligence there must be a concurrence of two things: First, negligence; and, second, injury resulting as a proximate cause of it. It matters not how negligent a person may be, the negligence, unless the injury complained of was the proximate result of it, will not authorize a recovery in damages." Conway v. Louisville & Nashville R. R. Co., 135 Ky. 229; Osborne's Admr. v. C., N. O. & T. P. Ry. Co., 158 Ky. 176.

Applying now these rules to the case in hand, there is no doubt as to the sufficiency of the evidence to show that the gas and electric company was guilty of the negligence that caused the injury, and therefore we may pass this feature of the case.

It is next contended that the instructions did not submit the gas and electric company's defense to the jury. In support of this ground of objection complaint is made of the failure of the trial court to give an instruction offered by counsel for the gas and electric company telling the jury that "If they shall believe from the evidence that Fallon and Devenny, employes of the Louisville Gas & Electric Co., found a hole in the closet floor open when they went to the plaintiff's house on July 20, 1916, and that they left it in the same condition, they were under no obligation to cover said hole when they quit work, and the law is for the defendant gas and electric company."

The gas and electric company was entitled to have submitted to the jury an instruction presenting this defense, because when the case went to the jury the only defense that it had was that its men left the closet floor as they found it, and so the company was not liable. Its

liability depended on the establishment of the fact that they did not leave the closet floor as they found it. But the idea embodied in the offered instruction was fairly submitted to the jury and in such manner that they could not have found a verdict against the gas and electric company unless they believed that its men did not leave the closet floor like they found it.

The court told the jury that it was the duty of the employes of the gas and electric company, when they left the closet referred to in the evidence, to exercise ordinary care to leave the floor in a condition substantially as safe as the condition in which they found it, and that if the jury believed from the evidence that they failed to leave the floor in a condition substantially as safe as that in which they found it, and such failure caused the injuries of which the plaintiff complained, then the law was for the plaintiff, but unless they so believed the law was for the defendant, the Louisville Gas & Electric Co., and the jury should so find.

There is a further suggestion that it could not be anticipated that Mrs. Nall would go into this closet without a light or without first lighting a match, and as she did a thing that could not be anticipated the gas and electric company should not be held accountable for the injuries she sustained.

There is no merit whatever in this contention. This closet was in Mrs. Nall's house, and until made dangerous by the negligence of the employes of the gas and electric company, as found by the jury, it was perfectly safe to go into and out of in the dark, and the employes of the gas and electric company, if they were men of ordinary intelligence, could not fail to have anticipated that Mrs. Nall would go in and out of this closet frequently. The closet was put there for the use of the occupants of the house and was put to use by her. Ky. Heating Co. v. Hood, 133 Ky. 383.

It is also argued that the damages are grossly excessive, but we do not think so. It is not worth while extending this opinion reciting evidence showing the serious and permanent nature of the injuries sustained by Mrs. Nall. It is sufficient to say that the amount of damages to be awarded was for the jury, and the assessment was not so large as to show that it was the result of prejudice or passion.

A final suggestion concerns alleged misconduct of Mrs. Nall, but we may pass this with the comment that we find no reversible error in what she did.

The judgment is affirmed. Whole court sitting. Judges Clarke and Thomas dissenting.

### DISSENTING OPINION BY JUDGE CLARKE.

Being unable to agree with the opinion of the majority of the court in this action, and believing that it authorizes an unwarranted innovation in our practice, I feel impelled to state briefly my reasons for dissenting.

Recognizing the code inhibition against joining in one action two defendants, not jointly liable for a tort, with a prayer for relief alternately against the one or the other, the opinion nevertheless permits that very thing to be done by the artless subterfuge of pleading a joint liability that does not exist and then proving that only one or the other is liable. It appears to me anomalous that one may be permitted to employ a court to accomplish by indirection what he is forbidden to do directly, and it would seem axiomatic that if a demurrer would have been sustained to the petition, if it had truly stated the facts as developed by the evidence, a motion for a peremptory instruction, which is, as stated in the opinion, a demurrer to the evidence, must necessarily, and for the same reason, be sustained. How facts, if stated in the pleadings can be insufficient to support an action, but sufficient if developed by the evidence, I am utterly unable to comprehend. And a non-suit would have resulted from a statement of the facts in the petition as they were developed by the evidence, because the statement that one or the other of two defendants is liable does not state a cause of action against either. Section 113, Civil Code; Brown v. I. C. R. Co., 100 Ky. 525. And there would have been no occasion for a motion to elect, as assumed in the opinion, because the petition so drawn would not have been a misjoinder, affording reason for election which might be waived, but would have stated no cause of action whatever against any one. For the very same reason non-suit, and not election, must result when the evidence discloses the fact that defendants were not joint tort feasors, but that only one or the other and not which one was separately and independently liable, and that such is the law, so far as I am informed, has been uniformly held by this court in a long line of cases, of which the following cited in the opinion are fair examples: Hughes v. Cincinnati, &c., Ry. Co., 91 Ky. 526; Louisville Gas Co. v. Kaufman, Straus & Co., 105 Ky. 131; Thomas' Admr. v. Eminence

Distillery Co., 151 Ky. 29; L. & N. R. Co. v. Long, 139 Ky. 299; and C. & O. Ry. Co. v. Atkins, 167 Ky. 329.

The majority opinion is based solely upon an assumed failure of defendants to object to being sued jointly for their confessed several liabilities, but it seems to me they did object both by their separate answers denying any joint liability and thereafter, in the proper and only authorized way, by the motion for a peremptory, and that a motion to elect was not proper both for the reason I have heretofore stated and because the code provides such a motion shall be made before answer is filed, clearly showing it is directed at the pleadings and not the evidence.

But even if such a motion could be employed against evidence showing a misjoinder of actions that had been concealed in the pleadings, which I doubt, and defendants had made it and the court had required plaintiff to elect and she had elected to proceed against the gas company alone, the situation would have remained unaltered, since plaintiff's proof showed only her injury from a tort committed by the gas company or another, but not which, under which circumstances she was not entitled to recover under the line of authorities, examples of which are referred to above.

The only authorities cited in support of the practice, approved by this court for the first time in this case so far as I can find, are, in my judgment, not applicable.

In those actions a servant alleged to have committed the tort was joined with the master responsible for the servant's acts, where both were clearly *jointly* liable if the injury resulted from the negligence of the servant, alone; that is, the complainant may by pleadings *and* proof join with the master as defendants such servants as participated in the negligent act complained of. In other words, one or *both jointly* were liable for the same negligent act, where as in the case at bar only one or the other of two independent parties is liable, *but not both* by any possibility, for separate and independent acts performed on different dates. I am unable to see in the cases cited such analogy as warrants a disregard of the plain legislative regulation of procedure found in section 113 of the code.

Plaintiff alleged a joint cause of action against both defendants, but this she did not prove, nor did she prove a cause of action against either because she proved that neither, rather than the other, was liable, and only that

one or the other but not which was liable. In other words, she got into court by falsely alleging a joint cause of action, and is allowed to remain in court after she has disproved the alleged or any cause of action, upon the ground that different parts of her evidence would convict one or the other defendant of the negligence complained of, which, in my judgment, necessarily ignores or overrules the oft repeated rule of this court, that where the evidence is equally consistent with the existence or non-existence of negligence upon the part of a defendant, he is entitled to a directed verdict.

Nor does this rule or my views conflict in any way with the right of a plaintiff or a defendant to contradict his witness who unexpectedly gives evidence against his, and in favor of his adversary's theory of the case, for it is the province of the jury to decide the merits upon the evidence of conflicting theories advanced by the respective parties, but the jury ought not to be called upon to decide which of two defendants, one only of whom is severally liable, the plaintiff ought to have sued as was done here; and to avoid such a necessity, section 113 of the code prohibits such a double cause of action being pleaded while the rule last above mentioned has heretofore prevented its being proven.

To me, plaintiff's two theories, equally supported and only one of which could be true, seem mutually destructive of each other. She proved by one set of witnesses that the gas company alone, by its agents' acts on Tuesday, was guilty of the damaging negligence, and by another set of witnesses, that Fleck by acts of his agents on Monday, alone was the guilty party; equally and impartially proving that the gas company was guilty of negligence and that it was not guilty; that Fleck was negligent and was not negligent. In other words, she marched up the hill, turned around and marched down again, which seemingly ought to have left her about where she started.

Judge Thomas concurs in the views herein expressed.